IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOE MANIS,                          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
U.S. DEPARTMENT OF                  )
AGRICULTURE; THOMAS JAMES           )
VILSACK, in his official            )          1:24-cv-175
capacity as the Secretary           )
of Agriculture; MICHAEL             )
WATSON, in his official             )
capacity as Administrator           )
of the Animal and Plant             )
Health Inspection Service,          )
                                    )
          Defendants.               )


**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

     Before this court is a Motion for a Temporary Restraining

Order and Preliminary Injunction with Request for Oral Argument

filed by Plaintiff Joe Manis. (Doc. 7.) Plaintiff requests that

Defendants the United States Department of Agriculture ("USDA"),

Thomas Vilsack, United States Secretary of Agriculture, and

Michael Watson, Administrator of the USDA's Animal and Plant

Health Inspection Service ("APHIS") be enjoined from enforcing

the Horse Protection Act ("HPA"), 15 U.S.C. § 1821 <u>et seq.</u>,

against Plaintiff through the USDA's administrative adjudication

process. For the reasons stated herein, Plaintiff's motion for preliminary injunction will be denied.

## I. <u>FACTUAL BACKGROUND</u>

Plaintiff is "a retired North Carolina businessman who has been involved with Tennessee Walking Horses for the last 50 years, active in the North Carolina Walking Horse Association ('NCWHA') for the last 30 years, and who owns walking horses, one of which is regularly shown in competitions across the southeast." (Compl. (Doc. 1) ¶ 1.) On May 19, 2023, the USDA's APHIS filed a complaint against Plaintiff "alleging that he violated the HPA by allowing the entry of a horse he owned into a Virginia horse show while the horse was allegedly sore."[1] (<u>Id.</u> ¶ 68.)

When the assigned Administrative Law Judge ("ALJ") proposed scheduling a hearing on the matter, Plaintiff "moved to dismiss on the grounds that the USDA's internal adjudication process is unconstitutionally structured." (<u>Id.</u> ¶¶ 71–72.) Plaintiff also requested that any hearing before the ALJ be postponed in light of his motion to dismiss "and the anticipated filing of this Complaint." (<u>Id.</u> ¶ 74.) The ALJ declined to issue a stay in the

---

[1] Though Plaintiff denies this allegation, (<u>see</u> Compl. (Doc. 1) ¶ 70), the merits of the USDA's complaint against Plaintiff are not at issue in this case, (<u>see</u> <u>id.</u> ¶ 97 ("[Plaintiff's] constitutional challenges are irrelevant to the merits of the allegation against him.")).

proceedings, (id. ¶¶ 75–76), and Plaintiff filed his Complaint in this court alleging the same claims, (see generally id.).

"In sum," Plaintiff alleges that the USDA's "enforcement scheme subjects [him] to an unconstitutional hearing, (1) without a jury as required by the Seventh Amendment, (2) in violation of Article III of the Constitution, (3) before an ALJ, who is improperly supervised, and whose dual-layer tenure protection violates the separation of powers, and (4) whose decision can only be appealed to a Judicial Officer who is improperly wielding principal-officer power." (Id. ¶ 94.)

## A. Seventh Amendment Jury Requirement and Article III Violation

Plaintiff contends that "[t]he pending allegation against [him] is effectively a suit at common law with a legal remedy for which he is entitled to a jury trial that is not available in the USDA adjudication process." (Id. ¶ 88.) Plaintiff also argues that "[i]f a statutory claim ultimately adjudicates a private right, it must be adjudicated by an Article III court." (Id. ¶ 171.) This is because, in Plaintiff's view, "[t]he HPA effectively codifies private right claims for fraud and breach of contract," therefore that statute must be "adjudicated by an Article III court." (Id. ¶¶ 171, 173.)

## B. Improperly Supervised ALJs with Unconstitutional Dual-Layer Removal Protection

The USDA ALJs, who are appointed by the Secretary of the USDA, "make the initial decision in each adjudication." (Id. ¶¶ 47-48 (citing 7 C.F.R. § 2.27(a)(1)).) ALJs "are empowered to rule upon motions and requests, conduct conferences and hearings, administer oaths and affirmations, issue subpoenas, hear oral argument on facts or law, and take other significant actions during the course of the administrative hearing." (Id. ¶ 52 (citing 7 C.F.R. § 1.144(c)).) Once the initial adjudication process is complete, the ALJs "issue an initial decision that 'become[s] final without further proceedings unless there is an appeal to the Secretary,'" who, as explained in more detail below, has delegated his authority to hear such appeals to the Judicial Officer. (Id. ¶¶ 53-54 (citing 7 C.F.R. § 2.27; 5 U.S.C. § 557; 7 C.F.R. § 1.145(a)).)

Plaintiff argues that USDA ALJs "enjoy two layers of protection from removal by the President," which violates the separation of powers. (Id. ¶ 49.) ALJs "can be removed 'only for good cause established and determined by the Merit Systems Protection Board' ('MSPB')." (Id. ¶ 50 (quoting 5 U.S.C. § 7521(a)).) In turn, the members of the MSPB may only "be removed by the President . . . for inefficiency, neglect of duty, or malfeasance in office." (Id. ¶ 51 (quoting 5 U.S.C.

§ 1202(d)).) Plaintiff argues that "[t]he President's ability to remove executive officers is central to the President's executive power," yet he cannot exercise this power over ALJs because both ALJs and the MSPB can only be removed for cause. (See id. ¶¶ 130–39.)

**C. ALJs' Decisions Can Only Be Appealed to the Judicial Officer, Who Improperly Wields Principal-Officer Power**

Under the 1940 Schwellenbach Act, the Secretary of the USDA "delegated his authority to impose civil penalties for violations of the HPA to USDA's Judicial Officer, a position created by the Secretary." (Id. ¶¶ 44–45 (citing 7 U.S.C. § 2204-2; 7 C.F.R. § 2.35; 10 Fed. Reg. 13769 (Nov. 9, 1945)).) "In an appeal of an initial decision by an ALJ, the Judicial Officer reviews the parties' briefs, presides over oral argument, and issues a final decision for the Department." (Id. ¶ 55 (citing 7 C.F.R. §§ 1.145, 2.35(a)).) Therefore, through this delegation, "[t]he Judicial Officer exercises the final decision-making power of USDA in the adjudication." (Id. ¶ 56 (citing 7 C.F.R. § 2.35).)

However, the Judicial Officer "was not appointed by the President" or "confirmed by the Senate," and Plaintiff alleges that the Judicial Officer "does not hold any office created by law." (Id. ¶¶ 57–59.) "No statute or regulation permits the Secretary to affirm, reverse, or otherwise review the decision

- 5 -

of the Judicial Officer," and though the Secretary can revoke his delegation to the Judicial Officer, he cannot do so retroactively. (Id. ¶¶ 61, 63 (citing 7 U.S.C. § 2204-3).) "As a result, the Secretary is prohibited from reviewing, affirming, modifying, or reversing the Judicial Officer's decision after it is made." (Id. ¶ 64.)

Plaintiff alleges that this structure violates the Appointments Clause because the Judicial Officer "functions as a principal officer" by exercising "the final decision-making authority in USDA's adjudications," without being "appointed by the President and confirmed by the Senate as required by the Appointments Clause of the U.S. Constitution, art. II, § 2, cl. 2." (Id. ¶¶ 66-67.)

## II.  PROCEDURAL HISTORY

Plaintiff filed his Complaint on March 1, 2024. (Compl. (Doc. 1).) On March 6, 2024, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction with Request for Oral Argument, (Pl.'s Mot. for a TRO and Prelim. Inj. with Request for Oral Argument ("Pl.'s Mot.") (Doc. 7)), and a brief in support, (Br. in Supp. of Pl.'s Mot. for TRO and Prelim. Inj. with Request for Oral Argument ("Pl.'s Br.") (Doc. 8)). The court denied Plaintiff's Motion for Temporary Restraining Order on March 27, 2024. (Doc. 16.)  Defendants

- 6 -

responded to Plaintiff's motion for preliminary injunction on March 27, 2024, (Defs.' Mem. in Resp. to Pl.'s Mot. for Prelim. Inj. ("Defs.' Resp.") (Doc. 18)), and Plaintiff replied on April 2, 2024, (Reply in Supp. of Pl.'s Mot. for Prelim. Inj. ("Pl.'s Reply") (Doc. 19)). The court heard oral argument from the parties on April 17, 2024, after which it took Plaintiff's motion under advisement. The motion is now ripe for ruling.

## III. **STANDARD OF REVIEW**

"Preliminary injunctive relief and TROs are not remedies 'awarded as of right,' but '[a]s a matter of equitable discretion[.]'" Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc., 678 F. Supp. 3d 88, 100 (D.D.C. 2023) (quoting Benisek v. Lamone, 585 U.S. 155, 158 (2018)). "A plaintiff seeking a preliminary injunction must establish" four prongs: "that [1] he is likely to succeed on the merits, that [2] he is likely to suffer irreparable harm in the absence of preliminary relief, that [3] the balance of equities tips in his favor, and that [4] an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "Courts considering whether to impose preliminary injunctions must separately consider each Winter factor." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017). "A preliminary injunction is an extraordinary remedy intended to protect the

- 7 -

status quo and prevent irreparable harm during the pendency of the lawsuit," and the moving party bears the burden of "clearly establish[ing] entitlement to the relief sought." Id.

## IV. **ANALYSIS**

### A. **Likelihood of Success on the Merits**

A plaintiff seeking a preliminary injunction "need not establish a 'certainty of success,' but must make a clear showing that he is likely to succeed." Di Biase, 872 F.3d at 230 (citation omitted). "[T]he burden placed upon Plaintiff[] to show that each requirement of a preliminary injunction is met is high. Consequently, merely 'providing sufficient factual allegations to meet the [Federal Rule of Civil Procedure] 12(b)(6) standard of Twombly and Iqbal' does not show a likelihood of success on the merits." J.O.P. v. U.S. Dep't of Homeland Sec., 338 F.R.D. 33, 60 (D. Md. 2020) (citation omitted).

Plaintiff alleges that the "USDA's in-house adjudication process imposes a here-and-now constitutional injury on [Plaintiff] — namely, (1) the absence of a principal officer to issue a final decision in the case and supervise the inferior officer ALJs, (2) the lack of ALJs properly accountable to the President, (3) the absence of a jury as required by the Seventh

- 8 -

Amendment, and (4) the unlawful attempt to adjudicate private rights outside of an Article III court." (Compl. (Doc. 1) ¶ 89.)

1. **The USDA Judicial Officer Exercises Principal Officer Power Without a Constitutional Appointment to Do So**

"The Appointments Clause requires that the President 'shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . [principal] Officers of the United States.'"" In re Palo Alto Networks, Inc., 44 F.4th 1369, 1372 (Fed. Cir. 2022) (quoting Art. II, § 2, cl. 2). "Thus, '[the President] may be assisted in carrying out [executive] responsibility by officers nominated by him and confirmed by the Senate, as well as by other officers not appointed in that manner but whose work . . . must be directed and supervised by an officer who has been.'" Id. (quoting United States v. Arthrex, 594 U.S. 1, 6 (2021)).

Plaintiff argues that the Judicial Officer unconstitutionally exercises principal officer power without a proper appointment under the Appointments Clause because "[t]he Secretary cannot review the Judicial Officer's decisions because of the statutory bar on the retroactive revocation of a delegation." (Pl.'s Br. (Doc. 8) at 6 (citing 7 U.S.C. § 2204-

3).)[2] Therefore, the Judicial Officer is not supervised by a principal officer, so the Judicial Officer wields principal officer power without a proper appointment in violation of the Appointments Clause. (Id.) However, Defendant argues that the Judicial Officer is sufficiently supervised by the Secretary and "is an inferior officer because his delegation may be revoked, his decisions are subject to the Secretary's review, and he may be terminated at will." (Def.'s Resp. (Doc. 18) at 8.)

In Edmond v. United States, 520 U.S. 651 (1997), the Supreme Court enumerated the factors to be considered in evaluating whether an officer is principal or inferior: "whether (1) the officer is bound to follow regulations promulgated by an agency head, (2) the officer can be removed at will and without cause by the agency head, and (3) the agency head can review the decisions of the officer." McConnell v. USDA, 4:23-cv-24, 2023 WL 5963782, at *3 (E.D. Tenn. Sept. 13, 2023) (citing Edmond, 520 U.S. at 661).

Despite Plaintiff's assertion that the Secretary has no control over the Judicial Officer, there are certain mechanisms of control in place:

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

> The Secretary may promulgate regulations which the
> Judicial Officer must follow. 15 U.S.C. § 1828; 7
> C.F.R. § 1.131 . . . . Furthermore, the Judicial
> Officer is removable at will, and the Secretary may
> revoke his delegation of authority to the Judicial
> Officer at any time. 7 U.S.C. § 2204-2.

McConnell, 2023 WL 5963782, at *3. Plaintiff argues that because
this delegation cannot be revoked retroactively, and the
Secretary cannot review decisions already made by the Judicial
Officer, the Secretary does not adequately supervise the
Judicial Officer. (Pl.'s Br. (Doc. 8) at 13-14.) However, "the
fact that the Secretary cannot review the Judicial Officer's
decisions does not defeat inferior-officer status" because the
Edmond analysis requires examination of all three factors, not
solely whether the Secretary can review the Judicial Officer's
decisions.[3] See McConnell, 2023 WL 5963782, at *4 (citing
Varnadore v. Secretary of Labor, 141 F.3d 625 (6th Cir. 1998)).

Though the Secretary cannot retroactively override the
Judicial Officer's decisions, which are final decisions of the
USDA, the Secretary exercises control over the Judicial Officer

---

[3] Plaintiff argues that under Arthrex, "[t]he test for
distinguishing an inferior officer from a principal officer is
supervision." (Pl.'s Br. (Doc. 8) at 11 (citing United States v.
Arthrex, 594 U.S. 1, 141 S. Ct. 1970, 1980 (2021)).) However,
the Arthrex Court specifically stated: "we do not attempt to
'set forth an exclusive criterion for distinguishing between
principal and inferior officers for Appointments Clause
purposes.'" Arthrex, 594 U.S. at 23. Instead, the Court
"reaffirm[ed] and appl[ied] the rule from Edmond." Id. at 27.

- 11 -

both in his ability to promulgate regulations the Judicial
Officer must follow as well as remove the Judicial Officer from
his position should the Secretary choose to do so. These
restrictions on the Judicial Officer are significant, and do not
appear to permit the Judicial Officer to have the sort of
unfettered discretion typical of a principal officer. The court
declines to assume, based on the limited[4] record at this stage,
that these mechanisms are insufficient to render the Judicial
Officer's decisions actions that may be undertaken only by a
principal officer duly appointed under the Appointments Clause.
Accordingly, Plaintiff does not demonstrate a likelihood of
success on the merits of his claim that the Judicial Officer
unconstitutionally exercises principal officer power in
violation of the Appointments Clause.

---

[4] By "limited record," this court is referring to the
absence of an in-depth recounting of the applicable regulations
by either party. The Government points to regulations such as 7
C.F.R. § 2.12, 7 C.F.R. § 1.132, 9 C.F.R. §§ 11.1 et seq., and
60 Fed. Reg. 8446 (Feb. 14, 1995), (Defs.' Resp. (Doc. 18) at
9), all of which, when considered in tandem with 7 U.S.C.
§ 2204-2, suggest there may be adequate supervision even though
the Judicial Officer's decision is final agency action. For
purposes of a preliminary injunction, this court finds that
Plaintiff has established a plausible, and perhaps possible,
chance of success but falls short of establishing a likelihood
of success on the merits.

## 2. **The USDA Judicial Officer is an Improperly Appointed Inferior Officer and His Status as an Inferior Officer Leaves USDA ALJs without Adequate Principal Officer Supervision**

Plaintiff argues that, even if the Judicial Officer is an inferior, rather than a principal officer, "he still cannot exercise that authority because Congress did not create an office for the Judicial Officer." (Pl.'s Br. (Doc. 8) at 15.) Plaintiff further contends that "if the Judicial Officer is only an inferior officer, . . . [t]he ALJs, whom the Judicial Officer supervises, lack oversight from a properly appointed officer." (Id. at 17.)

### a. **The Creation of the Judicial Officer**

Plaintiff contends that the Judicial Officer's office is not established by law in violation of the Appointments Clause because "the Judicial Officer holds no office established by Congress." (Pl.'s Br. (Doc. 8) at 15.)

The USDA Secretary is authorized by 7 U.S.C. § 2204-2 to delegate "the whole or any part of any regulatory function which the Secretary is . . . required or authorized to perform" if the Secretary "deems that the delegation . . . will result in the more expeditious discharge of the duties of the Department of Agriculture." 7 U.S.C. § 2204-2. The Secretary is authorized to both designate "officers or employees" to receive delegations of his authority, and to "assign appropriate titles to such

- 13 -

officers or employees." Id. Pursuant to this statutory authorization, the Secretary created the office of Judicial Officer to "act as final deciding officer" in several enumerated adjudicatory proceedings conducted by the USDA. See 7 C.F.R. § 2.35; see also 7 C.F.R. § 2.4.

Though Congress itself did not explicitly create the office of Judicial Officer, it did explicitly grant the Secretary authority to do so. 7 U.S.C. § 2204-2. The fact that the Judicial Officer's position was created by the Secretary through regulations pursuant to a statutory authorization, rather than directly through a statute, does not mean that the Judicial Officer's office was not statutorily authorized. In fact, as Plaintiff states in his brief, the Appointments Clause itself "permits inferior officers to be appointed by a head of department if Congress 'vest[ed]' that authority in him 'by Law.'" (Pl.'s Br. (Doc. 8) at 16 (citing U.S. Const. art. II, § 2, cl. 2).) It is not clear to the court how the appointment process for the Judicial Officer described above fails to comport with the Appointments Clause. Therefore, Plaintiff does not demonstrate a likelihood of success on the merits of his claim that the Judicial Officer cannot be an inferior officer because his position was not established by law.

- 14 -

## b. **ALJ Supervision**

Plaintiff argues that if the Judicial Officer is an inferior officer, the USDA ALJs are not properly supervised because they are supervised by the Judicial Officer, an inferior officer, rather than the Secretary himself, a principal officer. He asserts that because "[t]he Judicial Officer is the exclusive avenue for review of USDA ALJs' initial decisions," the ALJs are not adequately supervised by a principal officer. (Pl.'s Br. (Doc. 8) at 17.) However, as discussed above, the Secretary can revoke his delegation of authority to the Judicial Officer at will at any time, and the Secretary can also take on the Judicial Officer's authority without revoking that delegation. "This means that the Secretary can step in and review the decisions of an ALJ before it is reviewed by the Judicial Officer," which is a powerful method of supervision. McConnell, 2023 WL 59637, at *5 (citing Fleming v. USDA, 987 F.3d 1093, 1103 (D.C. Cir. 2021)). Therefore, the Secretary "has considerable influence over whether an ALJ's decision becomes the final decision of the agency," because he may, "at his election, step in and act as final appeals officer in any case." Fleming, 987 F.3d at 1103. Additionally, as Defendants explain, the USDA ALJs "must follow the Secretary's procedural and

- 15 -

substantive regulations." (Defs.' Resp. (Doc. 18) at 13 (citing Fleming, 987 F.3d at 1103).)

Plaintiff contends that "[t]he Due Process Clause of the Fifth Amendment does not permit the Secretary to intervene at will to review an ALJ's decision himself." (Pl.'s Br. (Doc. 8) at 18 (citing Utica Packing Co. v. Block, 781 F.2d 71, 78 (6th Cir. 1986).) In Utica Packing, the Secretary of Agriculture replaced a judicial officer after the judicial officer had already rendered a final decision in a case, then the Secretary petitioned the judicial officer's replacement for reconsideration of the case to achieve an outcome favorable to the Secretary. 781 F.2d at 75–78. The facts and circumstances in Utica Packing were so unique that the court does not find that case to stand for the general proposition that a party's due process rights are violated each time the Secretary chooses to exercise the authority delegated to the Judicial Officer. Further, the Federal Circuit has repeatedly held that "the Appointments Clause was intended to prevent unappointed officials from wielding too much authority, not to guarantee procedural rights to litigants." In re Palo Alto Networks, Inc., 44 F.4th 1369, 1377 (Fed. Cir. 2022) (quoting Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH, 11 F.4th 1363, 1374 (Fed. Cir. 2021)). Accordingly, because the ALJs are "at some

- 16 -

level [] subject to the direction and supervision of an officer nominated by the President and confirmed by the Senate," Arthrex, 594 U.S. at 27, Plaintiff does not demonstrate a likelihood of success on the merits of this claim.

### 3. **The USDA ALJs' Removal Protection**

Plaintiff argues that "USDA ALJs enjoy two layers of tenure protection through the MSPB. 5 U.S.C. § 7521(a); 5 U.S.C. § 1202(d). But they 'exercise significant executive power' such that the President's removal authority cannot be restricted by two layers of tenure protection." (Pl.'s Br. (Doc. 8) at 20 (citing Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 514 (2010)).) Defendants argue that Free Enterprise should not be applied here because that case dealt with a highly unique set of facts, (Defs.' Br. (Doc. 18) at 15), which led the Court to clarify that its holding "does not address that subset of independent agency employees who serve as administrative law judges," Free Enter., 561 U.S. at 507 n.10.

As the Fourth Circuit has explained, there is a circuit split as to whether the removal scheme for ALJs is constitutional — the Ninth Circuit has declared the scheme constitutional, while the Fifth Circuit has deemed it unconstitutional. See K & R Contractors, LLC v. Keene, 86 F.4th 135, 148 (4th Cir. 2023). The Fourth Circuit did not ultimately

- 17 -

provide a resolution to the question of whether a scheme in
which ALJs can only be removed for cause, as determined by the
MSPB, whose members can also only be removed for cause, is
constitutional. See K & R Contractors, 86 F.4th at 148–49.
However, the "good cause" standard applicable to ALJs includes
"all matters which affect the ability and fitness of the ALJ to
perform the duties of office." Abrams v. Soc. Sec. Admin., 703
F.3d 538, 543 (Fed. Cir. 2012) (deferring to agency's reasonable
construction of "good cause" under Chevron deference). In turn,
a member of the MSPB can be removed for "inefficiency, neglect
of duty, or malfeasance in office." 5 U.S.C. § 1202(d). These
restrictions on removal do not appear to "tie[] the President's
hands and hinder[] his control over his subordinates." Decker
Coal Co. v. Pehringer, 8 F.4th 1123, 1133 (9th Cir. 2021).
Because of inconsistencies in the caselaw and the lack of
available precedent, Plaintiff does not demonstrate that he is
likely to succeed on the merits of his claim that the ALJs'
removal mechanism is unconstitutional.

### 4. **Plaintiff's Right to a Trial by Jury in an Article III Court**

Plaintiff argues that the "HPA violation [he] is alleged to
have committed is essentially a common-law claim involving
private rights for which [he] is entitled to a jury trial."
(Pl.'s Br. (Doc. 8) at 20.) This is, according to Plaintiff,

- 18 -

because "[a]ny claims in federal court that seek legal remedies such as civil monetary penalties require a jury trial," and "the HPA empowers APHIS to seek and collect civil monetary penalties — a legal remedy — through USDA's in-house adjudication process." (Compl. (Doc. 1) ¶¶ 149, 150 (citing <u>Tull v. United States</u>, 481 U.S. 412, 418–23 (1987); 15 U.S.C. § 1825(b)).) Defendant responds that "[u]nder the public-rights framework, USDA adjudications under the HPA involve public rights that Congress has created and, thus, are beyond the scope of the Seventh Amendment." (Defs.' Resp. (Doc. 18) at 18.)

The Seventh Amendment states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. However, "when Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" <u>Oil States Energy Servs. LLC v. Greene's Energy Grp., LLC</u>, 584 U.S. 325, 345 (2018) (quoting <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 53–54 (1989)). That said, "[a] jury trial may be required for claims created by statute when the action is 'analogous to "Suits at common law."'" <u>McConnell</u>, 2023 WL 59637, at *6 (quoting <u>Tull v. United States</u>, 481 U.S. 412, 417 (1987)).

"A statutory claim is analogous to a common law claim if: (1) it is sufficiently similar to '18th-century actions brought in the courts of England prior to the merger of the courts of law and equity,' and (2) it provides a legal (monetary) remedy." Id. (quoting Tull, 481 U.S. at 417–18). Plaintiff argues that an HPA enforcement proceeding is not only "an action for civil monetary penalties, but it is also effectively a common law fraud claim" because "[o]wners of horses are prohibited from allowing one of their horses to be entered into a horse show while sore to prevent owners from gaining an unfair advantage in the competition and harming fellow competitors." (Pl.'s Br. (Doc. 8) at 24–25.) However, this court concurs with the court in McConnell that the HPA is not analogous to common-law fraud, but is instead "a distinct cause of action created by Congress and properly assigned to a federal agency to administer within its area of expertise." McConnell, 2023 WL 59637, at *6. This is because the HPA "does not require any false statements or misrepresentation, nor does it require any injury to a third party. Simply because it is possible to commit both common law fraud and violate the HPA at the same time does not mean the claims are analogous." Id.

Further, even if the HPA can be analogized to a common-law fraud claim, "the 'public-rights' doctrine may still allow the

- 20 -

claim to be heard before an administrative agency without a jury." McConnell, 2023 WL 59637, at *6 (citing Granfinanciera, 492 U.S. at 42, 51). The Court in Granfinanciera held that "when Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be "preserved" in "suits at common law."'" Granfinanciera, 492 U.S. at 51. "Public rights" actions, as opposed to disputes between private citizens, "aris[e] between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." Stern v. Marshall, 564 U.S. 462, 489 (2011).

Here, the USDA's enforcement of the HPA "clearly involves statutory public rights." Sasser v. Administrator, U.S. E.P.A., 990 F.2d 127, 130 (4th Cir. 1993). While the HPA does not have a clear congressional declaration of purpose like the Clean Water Act at issue in Sasser did, the HPA statute is clear that its goals were to prevent "the movement, showing, exhibition, or sale of sore horses in intrastate commerce" which "adversely affects and burdens interstate and foreign commerce," and that "regulation under this chapter by the Secretary is appropriate to prevent and eliminate" these burdens. See 15 U.S.C. §

- 21 -

1822(3), (5).[5] These goals reflect Congress's "authority in connection with the performance of the constitutional functions of the executive or legislative departments," see Stern, 564 U.S. at 489, rather than legislation regarding typical disputes between private citizens.

Plaintiff does not carry his burden of clearly demonstrating a likelihood of success on the merits of his claim that HPA violations must be adjudicated through a jury trial in an Article III court.[6]

Because Plaintiff fails to show a likelihood of success on the merits of each of his claims, this court will not evaluate the remaining Winter factors.

---

[5] The USDA's HPA Fact Sheet states that "USDA has two goals in administering the Horse Protection Act: eliminate the cruel and inhumane practice of soring," and "promote fair competition." USDA Animal and Plant Health Inspection Service, The Horse Protection Act, https://www.aphis.usda.gov/sites/default/files/bro-horse-protection-act.pdf (last accessed Apr. 22, 2024).

[6] "The same private rights analysis for the availability of a jury trial under the Seventh Amendment is applicable to whether Congress can 'assign adjudication of that cause of action to a non-Article III tribunal.'" (Compl. (Doc. 1) ¶ 170 (quoting Granfinanciera, 492 U.S. at 53).)

V. __CONCLUSION__

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction with Request for Oral Argument, (Doc. 7), is **DENIED**.

This the 24th day of April, 2024.

_William L. Osteen, Jr._
United States District Judge

Case 1:24-cv-00175-WO-JLW   Document 21   Filed 04/24/24   Page 23 of 23